Michael E. Sweeney, J.
This proceeding comes before the court by way of an order to show cause wherein the petitioner seeks an order directing the Board of Inspectors of the Third and Sixth Election Districts of the Tenth Ward of the City of Schenectady to reconvene, recanvass and correct the statement of canvass as it affects the vote in the general election held on November 7, 1961 for the office of Supervisor. The petitioner was the Democratic candidate and Liberal candidate for the office of Supervisor. One of the respondents, Frank J. Chamberlain, was the Republican candidate for the office.
The unofficial result gave petitioner James Devine 1,687 votes and respondent Frank J. Chamberlain 1,689 votes. There are three votes in question. At the hearing two ballots marked petitioner’s Exhibits No. 1 and No. 2 were received in evidence. These ballots were absentee ballots and the voter in each case put an X mark in the proper square in front of the petitioner James Devine’s name on both the Liberal line and the Demo *342 cratie line. In other words, he made two X marks in attempting to vote for James Devine. On one of these ballots there is an ink mark about the size of a dime, apparently made by the instrument marking the ballot. These votes were not counted for the petitioner James Devine and he takes the position that they should have been.
Exhibit No. 3 in evidence (ballot), which is reflected in the 1,689 votes credited to respondent Frank J. Chamberlain, was torn and the tear extended half way through the ballot. The petitioner takes the position that because of the tear this was a void ballot and should not have been counted for respondent. This ballot was also an absentee ballot.
I will dispose of Exhibit No. 3, the torn ballot, first. Rule 1 of section 212 of the Election Law provides: ‘ ‘ The whole ballot is void if the voter * * * (b) defaces or tears the ballot”.
At the hearing one Dorothy Anderson testified that she was one of the Republican Election Inspectors of the Sixth District on the night in question; that she was directed to open the absentee ballots and that when she opened the envelope containing the ballot in question, Exhibit No. 3, she accidently tore the ballot; that she immediately made this fact known to the Chairman of the Board of Inspectors and the two Democratic Election Inspectors on duty. The other Republican Election Inspector and the two Democratic Election Inspectors also testified and completely corroborated the testimony of Dorothy Anderson. Consequently, there is only one conclusion I can come to and that is that this ballot was torn by the Election Inspector in the process of removing it from the envelope. Since the tearing was not done by the voter himself, I conclude that this ballot is valid and was properly counted. (People ex rel. Brown v. Freisch, 215 N. Y. 356.)
The questions as to the validity or invalidity of Exhibits No. 1 and No. 2, are the same, with the exception of that involving the ink mark and I do not feel that that alone invalidates this ballot. It appears to me to be made by a faulty pen. The ink of the ink blot and the ink of the X marking the ballot appear the same. It is quite a common occurrence for fountain pens to blot and there is nothing here to indicate that it was intended to identify the ballot.
I feel that if marking the ballot for petitioner under both the Liberal and Democratic columns invalidates this ballot, it must be because it is determined to be a mark that identifies the ballot in violation of the statute. The X marks themselves are in the proper place. If the marks were inconsistent or confusing there would be reason for invalidating the vote cast for the office of *343 Supervisor. Such is not the case here. There is no question but that the voter intended to vote for the petitioner, and perhaps because he was over zealous or fearful of not voting for the petitioner, he did it twice.
This precise question, as far as I can find, has been before the court on only one other occasion. In People ex rel. Feeny v. Board of Canvassers (156 N. Y. 36) our highest court in 1898 determined that such marks did not invalidate the ballot, nor render it blank as to the particular office. In 1919 the Feeny case was cited with approval in People ex rel. Colne v. Smith (188 App. Div. 834, 840) and the court stated as follows: “ But voting more than once for the same candidate by making a cross mark in the voting space opposite his name in different columns * * * does not invalidate the ballot.”
New York Jurisprudence (vol. 18, Elections, § 409) cites the Feeny case as standing for this principle. I feel this early determination must be followed. I therefore conclude that Exhibits No. 1 and No. 2 are valid and should be credited to petitioner Devine.
There is one other question raised by respondent Chamberlain. He contends that while rule 4 of section 212 of the Election Law (which was enacted after the Feeny case) specifically provides that in the case of a candidate for Governor or member of the Assembly, a mark in two columns should be considered a vote for the candidate, but should not be recorded as a vote for any particular party or independent body, it does not apply to any other candidate. I do not feel that this can be construed to mean that such a rule applies only to the two mentioned offices. I believe that the legislative intent is clear, that although the vote should be counted for the candidate, no particular party or independent body is to get credit for the vote and it was for that reason that this statute was enacted.
In 1914, after the enactment of the above-mentioned statute, the Attorney-General was asked this question: “In case a voter marks the voting cross in more than one of the voting spaces before the name of a candidate nominated by more than one party, should the vote be counted for that candidate? ” After quoting from the statute which at that time referred only to a candidate for Governor, the Attorney-General held that in view of the decisions of the courts, citing People ex rel. Feeny v. Board of Canvassers (156 N. Y. 36) the rule also applies to any candidate on the ticket similarly situated. (1914 Atty. Gen. 370.)
According to my determination here, the election is declared a tie, since both parties have 1,689 votes.